Petition of Albert R. Sherman, for a writ of Habeas Corpus.

A recognizance given under Pub. Laws R. I. cap. 819, § 2, of the restraint of the insane, has for its single condition a restoration to soundness of mind, and cannot be discharged until such restoration is shown.

The constitutionality of an act, requiring restraint in cases of mental unsoundness which do not call for restraint, was not argued, and is not decided.

When uncontradicted professional experts testify to continuing mental unsoundness, the court will act on their evidence though it cannot itself find signs of insanity in the patient's appearance and examination before it.

*April* 13, 1891. Stiness, J. The petition sets forth that Elizabeth H. Carpenter is unlawfully restrained of her liberty under a recognizance, given pursuant to Pub. Laws R. I. cap. 819, § 2, of July 23, 1889, the condition of which is, that she shall not be permitted to go at large until she is restored to sound mind. The recognizance was taken by the district court of the Sixth Judicial District, after adjudication upon a complaint and warrant setting forth that she was insane. This court is bound to assume, upon such adjudication of the district court, that Mrs. Carpenter was at that time insane. This section which provides for the recognizance also provides for the detention of a person, if such recog-

nizance be not given, in the Butler Hospital for the Insane or the State Asylum, only until, in the judgment of the district court of the district in which he is detained, upon inspection and examination, such person be declared to be restored to soundness of mind, or to be no longer under the necessity of restraint, or until recognizance as aforesaid, satisfactory to the court, shall be given. Hence it is argued that the intent of the statute was likewise only to restrain one under recognizance so long as such restraint should be necessary, inasmuch as one may be discharged from actual confinement altogether when the necessity for restraint ceases. The argument is not without force, and the court would be quite inclined to hold that this was probably the intent of the statute, if the language of the section were not too plain to admit of such a construction. As the language is neither ambiguous nor contradictory, the court has no occasion to resort to the apparent intent of the section as a guide to its meaning. The recognizance provided for has the single condition of restoration to soundness of mind; while in the case of actual confinement, the alternatives of restoration and lack of necessity for restraint are specially expressed. The natural conclusion is, that the General Assembly would have expressed the same alternatives in the first part of the section as in the latter part, if it had so intended. Possibly it was omitted by inadvertence; but a *casus omissus* cannot be supplied by the court. This would be legislating into the section a provision which is not there. *Matteson* v. *Dederkey*, 12 R. I. 68. The question of the constitutionality of an act which requires a restraint that is unnecessary has not been argued, and we do not pass upon it. In the case of a person adjudged to be insane, weighing personal right against public security, we are not prepared to say that the provision is plainly void, even though it may not be clear why a person should be absolutely freed from restraint in case of confinement and not in case of a recognizance. It is to be noted that the statute provides no mode of discharging a recognizance given under it. We see no way in which it can be done except by a commission, or by habeas corpus; in both of which cases the question to be determined is distinctly stated to be the question of sanity or insanity. It follows, from the plain provision of the statute requiring restoration to soundness of mind before the recognizance can be discharged, that the petition

cannot be granted simply upon the ground that necessity for Mrs. Carpenter's restraint does not now exist.

The question comes, then, is she restored to soundness of mind? From the testimony of two physicians who saw and examined her in February, from the testimony of her condition for the past three months, and from her appearance before the court, where a long and searching examination failed to disclose any evidence of insanity, we might reasonably infer that she had recovered soundness of mind, if it were not for the fact that mental disease is often so occult as to escape detection by uninstructed eyes. That there have been delusions has been abundantly shown in evidence, but that they exist now is not apparent. It is therefore necessary to inquire of those accustomed to the treatment of mental diseases, to learn whether the present improved condition is a recovery, or only a lull of disease. The ordinary powers of observation do not suffice to determine so delicate a question. Upon this point the testimony of physicians, skilled in this department of pathology, is unanimous that she is not restored to soundness of mind. While we are constrained to say that it is by no means clear how a "progressive degenerative disease" is capable of visible improvement, both physical and mental, for so long a time, nevertheless we do not feel justified in rejecting, as erroneous, the uncontradicted opinions of unprejudiced experts of high standing, simply because we are unable to detect, at present, the existence of mental disorder. We are, therefore, obliged to find, upon the testimony in the case, that a full recovery is not, established, and consequently, that the petition must be denied.          *Petition dismissed.*

*Charles H. Page & Franklin P. Owen*, for petitioner.

*Ziba O. Slocum & Simon S. Lapham*, contra.